IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAMSIS RALPH MADDISON, 1168082, ) | | |
|     Petitioner, ) | | |
| ) | | |
| v. ) | No. | 3:07-CV-1036-N |
| ) | (Consolidated with | |
| ) | | 3:07-CV-1037-N) |
| ) | ECF | |
| NATHANIEL QUARTERMAN, ) | | |
| Director TDCJ-CID, ) | | |
|     Respondent. ) | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**I.     Procedural Background**

Petitioner challenges two convictions for aggravated sexual assault of a child under fourteen years of age. *State of Texas v. Ramsis S. Maddison*, Nos. F-02-43228 and F-02-43288, (Crim. Dist. Ct. No. 2., Dallas County, Tex., April 29, 2003). Petitioner pled guilty to the charges and was sentenced to forty years confinement on each conviction, to run concurrently.

On February 2, 2005, the Tenth District Court of Appeals affirmed the convictions. *Maddison v. State*, Nos. 10-03-00229-CR and 10-03-00230-CR (Tex. App. – Waco, 2005, pet.

ref'd.). On July 27, 2005, the Court of Criminal Appeals refused Petitioner's petitions for discretionary review. *Maddison v. State*, PDR Nos. 589-05, 590-05.

On May 2, 2006, Petitioner filed two state habeas applications challenging his convictions. *Ex parte Maddison*, Nos. 66,192-01 and -02. On April 18, 2007, the Court of Criminal Appeals denied the applications without written order on the findings of the trial court.

On June 12, 2007, Petitioner filed this federal petition. He argues: (1) his guilty plea was involuntary because he received ineffective assistance of counsel; and (2) trial counsel was ineffective for failing to call certain character/fact witnesses at the sentencing hearing.

## II. Factual Background

The following factual statement is taken from the state habeas court's findings of fact.

> The police became aware of this offense when [Petitioner] told them about the crimes. This investigation was initiated by [Petitioner], not by the complaining witness or his family. [Petitioner] made a videotaped confession to the crimes. [Petitioner], a 32-year-old leader in the Boy Scout program, met the complaining witness through that program when the boy was 12 years old. The sexual activity began when the boy was 13. According to [Petitioner], the boy approached him during a summer camp and the boy suggested sexual activities. [Petitioner] also stated that the boy got him involved in drug activity. [Petitioner] did not have steady employment and lived with the boy and his mother for a period of time. [Petitioner] went to the police because he knew that he had done something wrong. He tried to kill himself but eventually called the police "out of love" for the boy to stop the cycle of sex and drugs that was "destroying our lives." [Petitioner] asked the court to allow him to continue his rehabilitation and treatment while on probation. During the punishment phase of the trial the mother of the victim testified the boy now lives on a treatment center in Tyler and she was told that it was in the best interests of the boy that he not be brought to court to testify.

*Ex parte Maddison,* No. 66,192-01 at 253.

## III. Discussion

### 1. Standard of review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2049 (1997). The petition in this case is subject to review under the AEDPA.

**2**.     **Guilty Plea**

Petitioner argues his counsel was ineffective, which rendered his guilty plea involuntary. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

When a petitioner argues his guilty plea was not voluntary due to the ineffective assistance of counsel, he must show that his counsel's advice to plead guilty fell below the range of competence demanded of an attorney in a criminal case. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Further, he must show prejudice by

establishing "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206. This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*. at 206 (citing *Hill*, 474 U.S. at 56-58).

Petitioner states that because his counsel failed to interview the complainant, he did not know the complainant would have testified at trial that he did not recall Petitioner sexually abusing him. In support of his claim, he attaches an October 13, 2005, affidavit from defense investigator Bill Vanscykle. Vanscykle states that on October 4, 2003,[1] he approached the complainant who was sitting outside his house, and asked him questions about the case.[2] Vanscykle states the complainant told him he "had no recollection of having had a sexual relationship with Ramsis Maddison." (Pet. Ex. F). Vanscykle states the complainant denied having sex with Petitioner, but the complainant also stated "it was possible that he had had sex with [Petitioner], but he didn't know if anything happened or not." *Id*. Vanscykle also alleges that complainant stated he told the police he was not having sex with the Petitioner. *Id*.

Petitioner also attaches an affidavit from his trial counsel stating that counsel made a mistake in not interviewing the complainant. (Pet. Ex. D). Defense counsel states: "I believe that if the prosecutor had called [the complainant] to testify in its case-in-chief and he had testified in accordance with what he told Mr. Van Syckle (sic), while the state may have impeached him with a prior inconsistent statement made to investigators, such impeachment

---

[1] Petitioner was sentenced on May 8, 2003.

[2] It does not appear that a parent or guardian was present during Vanscykle's interview of the minor complainant.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 5**

could not have been used as substitive (sic) evidence of guilt against my client because impeachment goes only to the credibility of the witness." *Id*. Petitioner argues that if his counsel would have interviewed the complainant, he would not have pled guilty, but would have insisted on going to trial.

On state habeas review, the court rejected this claim. The court found that it was "pure speculation" that the victim would have testified at trial that Petitioner did not sexually abuse him and/or that he could not recall any sexual abuse. (*Ex parte Maddison* at 226).

In this case, Petitioner has submitted no affidavit or other evidence from the complainant regarding what the complainant would have said at trial. He also submitted no evidence that the complainant would have been willing to talk with defense counsel,[3] that the complainant's parent would have allowed the complainant to talk with defense counsel, or what the complainant would have told defense counsel had he talked with him before trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Petitioner has failed to establish that his counsel was deficient for not interviewing the complainant prior to trial.

Further, even if Petitioner had shown deficient performance, he has failed to establish that he was prejudiced by the alleged errors. Petitioner voluntarily contacted the Richardson police department and informed them of his sexual relationship with the complainant. (Pet. Ex.

---

[3]Petitioner has stated no basis for compelling the complainant to talk with defense counsel prior to trial.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 6**

E). Petitioner gave a video-taped confession regarding the incidents. (*Id*.; Ex. D). Petitioner also told Officer Bonifacio that he had anal and oral sex with the complainant. (Pet. Ex. E). Petitioner told the officer that he would buy cocaine and trade it for oral and anal sex with the complainant. *Id*.

Additionally, although the complainant initially told police investigators he did not have oral sex with Petitioner, he later admitted to the sexual conduct. (Pet. Ex. E). When police investigators asked the complainant about a specific date, the complainant stated that Petitioner had sucked his "penuts" on that date. *Id*. The complainant also told investigators that he had oral sex with Petitioner three times. *Id*.

Further, Petitioner would likely not have testified at the guilt/innocence phase to explain his relationship with the complainant. He does not argue that he did not commit the sexual assaults, and during sentencing, he testified to his remorse regarding his sexual conduct with the complainant. (*Id*. at 31). Additionally, witnesses Patricia Dennis, Rob Alexander and Ralph Maddison each testified during sentencing that they knew Petitioner had a sexual relationship with the complainant. If Petitioner had proceeded to trial, these witnesses may have been called by the state to testify regarding their knowledge about the assaults.

Given the speculative nature of Petitioner's claim that the complainant would have testified at trial that he did not recall any sexual abuse by Petitioner, and the overwhelming evidence against Petitioner, he has failed to establish that but for his counsel's advice to plead guilty, he would have insisted upon going to trial. Petitioner has failed to show that his guilty plea was involuntary because of the ineffective assistance of counsel.

### 3. Failure to Call Witnesses

Petitioner argues his defense counsel was ineffective for failing to call known fact witnesses during punishment who would have "explained to the court the unique relationship between me and the complainant that would have caused the court to assess a much lower sentence or place me on community supervision." (Pet. at 6).

Petitioner includes the affidavits of five character/fact witnesses. These witnesses state that the complaint manipulated Petitioner, that Petitioner was afraid of the complainant and that the complainant used drugs. (Pet. Ex. G-K).

Petitioner also submits an affidavit from psychiatrist Mark Botcky. Dr. Botcky states Petitioner was attracted to post-pubescent adolescents. (Pet. Ex. L at 2). Botcky states Petitioner began a sexual relationship with the complainant when the complainant was thirteen years old. *Id.* Dr. Botcky claims Petitioner was pressured by the complainant and became submissive to complainant. *Id.* at 3. Botcky states the complainant manipulated Petitioner and physically assaulted him. *Id.* at 3. Dr. Botcky also states there is a "strong indication" that Petitioner's deviancy is treatable. *Id.* at 4.

Petitioner has failed to establish that his counsel was deficient for not calling these witnesses. As the state habeas court found: "Essentially, the offered evidence blames the victim for the abuse and control he had over the applicant." (*Ex parte Maddison* at 228).

Further, defense counsel called other witnesses at the sentencing hearing who testified in support of leniency for Petitioner. Defense counsel called Dr. Frank Lewis who testified that Petitioner suffered from mental health problems, including depression, anxiety and sexual deviancy. (Sentencing Tr. at 21). He also testified that Petitioner was an "extremely dependent

personality." *Id*. Dr. Lewis determined that Petitioner was an "excellent candidate for probation." *Id*. at 23.

Defense counsel also called three fact/character witnesses. One witness, Petitioner's father, testified that the complainant was manipulative and that he was a delinquent. *Id*. at 42-43. Rob Alexander testified that he had known Petitioner for a number of years, and he believed Petitioner could be rehabilitated. *Id*. at 47. Patricia Dennis testified that she believed Petitioner was a good person and that he should be given probation. *Id*. at 49. Defense counsel also asked eleven audience members to stand in support of Petitioner and state their name and occupation to the Court. Defense counsel noted that the Court had already read the letters that most of these witnesses had submitted to the court in support of Petitioner. *Id*. at 53. In sum, Petitioner has failed to establish deficient performance.

Moreover, even if Petitioner could show deficient performance by his counsel, he has failed to establish the required prejudice. Petitioner must show that had counsel called these witnesses at sentencing, there is a reasonable probability that Petitioner's sentence would have been significantly less harsh. *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)[4]. In applying this standard, the Court "must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or

---

[4]The Fifth Circuit has found that the *Sprigg* standard applies to state sentencing, while the Supreme Court's standard enunciated in *Glover v. United States*, 531 U.S. 198, 203 (2001), applies to the federal sentencing guidelines. *See Ward v. Dretke*, 420 F.3d 479, 498 n.55 (5th Cir. 2005).

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 9**

aggravating circumstances." *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (quoting *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)).

In this case, Petitioner's range of punishment was five years to life imprisonment for each case. *See* TEX. PENAL CODE § 22.021(e) and § 12.32(a). The Court, however, could have deferred a finding of guilt, and placed Petitioner on deferred adjudication probation. TEX. CODE OF CRIMINAL PROC. Art. 42.12 § 3g. On the other hand, the court could have ordered that the two cases would run consecutively, rather than concurrently. *See* TEX. PENAL CODE § 3.03(b)(2). Petitioner's exposure therefore, was anywhere between deferred adjudication probation, to consecutive life sentences. Petitioner was sentenced to concurrent forty year sentences.

This Court must also weigh the aggravating and mitigating factors in this case. The mitigating factors include a number of affidavits from witnesses who have known Petitioner for a substantial period of time and who believe Petitioner is a good person, and that he should be placed on probation. He also submits an affidavit from Doctor Botcky, and there was testimony from Doctor Lewis, stating that Petitioner's sexual deviation is treatable. Petitioner has no previous criminal record. He also turned himself in to authorities and has expressed remorse for his actions.

This case also includes serious aggravating factors, however. Petitioner was a Boy Scout leader and was one of only two training counselors for the Circle 10 Boy Scout Counsel. (Sentencing Tr. at 27). Petitioner was the leader of the complainant's boy scout troop. (*Id*. at 10). By all accounts, the boy was troubled. Petitioner told the boy's mother that he would help the boy, and he eventually moved in with the boy and his mother. (*Id*. at 11-12). Petitioner

testified at the sentencing hearing that he engaged in oral and anal sex with the complainant multiple times, and that he and the complainant took crack cocaine together. (*Id*. at 30).

Additionally, on state habeas review, the court weighed the mitigating and aggravating factors and stated:

> You know, I think there's some unique circumstances dealing with your case, and it seems to me by the amount of people that you have here in support of you that in many areas of your life you've lived an exemplary life and have done the best with what you've had and really tried to do right, and on the other hand, you were in a position of authority over a lot of young men. . . .
>
> Unfortunately, you made a choice at some point on which way to go. Because of that, what potentially (sic) you had for a positive impact turned out to be a devastating impact on him. You were the adult. You were the one placing yourself in that position of authority and respect.
>
> Regardless of his background and what he seemed prior to him meeting you, he was still 13 years old. Because of that, I have no doubts it will be really hard for that person to trust adults again, to develop meaningful relationships with other men, lots of things. He's going to have to deal with this for the rest of his life.
>
> You present a hard case when the evidence shows what you did with this one person doesn't seem, that we know of, to come out anywhere else. It was just him. Even so, I think that's a tremendous responsibility that you violated, a trust that you violated.

(*Id*. at 56-57).

Considering the above factors, the Court finds Petitioner has failed to establish that but for counsel's failure to call these witnesses at the sentencing hearing, there is a reasonable probability that Petitioner's sentence would have been significantly less harsh. Petitioner's claim of ineffective assistance of counsel should be denied.

**4.      Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not

contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION:**

For the foregoing reasons, the Court recommends that Petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254 be denied with prejudice for failure to make a substantial showing of the denial of a federal right.

Signed this 10th day of December, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge -Page 12**

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).